PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    FAX: (415) 436-7234
    Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:24- CR -584 JSC and NO. 3:24-CR-00238 JSC |
|     Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
|   v. | Date:    April 23, 2025 |
| JOSE MOISES HERNANDEZ-MENDOZA, | Time:   10:00 a.m. |
|     Defendant. | Court:  Hon. Jaqueline S. Corley |

**INTRODUCTION AND SUMMARY**

    MOISES HERNANDEZ MENDOZA ("HERNANDEZ") was prosecuted initially in March 2024. His arrest was part of the Tenderloin Fast Track Program ("TFTP"). He pleaded guilty on May 8, 2024, to possession with intent to distribute fentanyl and was sentenced to time served, followed by a three-year term of supervised release on the standard and special conditions including a stay away order from the Tenderloin. At the sentencing hearing, he was specifically reminded by the Court that if for any reason he was not taken into ICE custody, he would need to report to Probation within 72 hours of

1  his release from custody.

2      Despite an Order requiring his release to the US Marshal, Santa Rita Jail instead honored an

3  outstanding warrant that was pending in Alameda County.  That warrant resulted in a dismissal of then

4  pending charges in state court and HERNANDEZ was released to the street.  HERNANDEZ thereafter

5  failed to report to the U.S. Probation Office or otherwise follow his supervised release requirements.  An

6  arrest warrant was issued by US Probation, and he was eventually arrested on new charges.

7      There are now two pending cases now before this Court.  In case number 3:24-CR-00584 JSC

8  (hereinafter, "the New Criminal Case"), the Defendant was arrested on September 18, 2024, by the

9  SFPD for possession with the intent to distribute fentanyl following his sale to an undercover police

10  officer in the area around the San Francisco Main Library on Larkin near Grove Street. In total, he was

11  found to be in possession of approximately 24 grams of fentanyl and 22.5 grams of methamphetamine.

12      The second case, 3:24-CR-0238, hereinafter, "the Form 12 Case") is a Petition and Arrest

13  warrant that were filed in May 2024 after he failed to report to Probation, following his release from

14  custody in Alameda County.  There are now additional charges in that Form 12 concerning his other

15  supervised release violations; committing a new crime, violating the stay away order from the

16  Tenderloin, and his possession of illegal narcotics in connection with his arrest on September 18, 2024,

17  in the New Criminal Case.

18      For the reasons set forth in detail below, the United States urges the Court to impose a sentence

19  of 24 months imprisonment in the New Criminal Case based on his guilty plea to possession with the

20  intent to distribute fentanyl in case 3:24-CR-00584 JSC. There should also be a separate prison sentence

21  of up to 12 months consecutive to the New Case term for the violations set forth in case 3:24-CR-0238,

22  the Form 12 case.  Following his incarceration on both matters, there should be a new term of supervised

23  release of three years based on his conduct in the New Criminal Case. There should also be a three year

24  term of supervised release to follow only on the New Criminal Case and no additional supervised release

25  on the Form 12 case.

26      Such a sentence is sufficient but not harsher than necessary to satisfy all the 18 U.S.C. § 3553(a)

27  factors pertinent to both cases.  These includes the need for specific and general deterrence, the need to

28  protect the public and to account for the other sentencing factors described in more detail below.  A

UNITED STATES' SENTENCING MEMORANDUM
NO. 3:24- CR -584 JSC and NO. 3:24-CR-00238 JSC                                      2

short Declaration of Counsel filed under seal is also included to further discuss the § 3553(a) factors.

**New Criminal Case**

On September 18, 2024, HERNANDEZ was arrested following a sale of fentanyl to an undercover police officer near Grove and Larkin Street in the Tenderloin. He was charged federally with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl. He was also found to be in possession of methamphetamine. See PSR at ¶¶ 9-15.

On the night of September 18, 2024, SFPD Officers were conducting a buy/bust operation in the Tenderloin and surrounding areas. A buy/bust operation is a law enforcement strategy involving an undercover officer purchasing narcotics from a drug dealer in exchange for marked city funds (U.S. currency). Once the marked money for drugs is exchanged and the sale completed, the undercover officer will give a signal to indicate the purchase and exchange was successful. The drug dealer/seller is then arrested by SFPD officers.

In this case, an undercover officer, the "UC" walked up to the San Francisco Public Library front entryway. The UC approached HERNANDEZ and engaged him in conversation and negotiated to purchase twenty dollars' worth of "clean" fentanyl from him. "Clean" is a term used by drug dealers and drug users to indicate a more potent or pure product to produce a better high. The UC then provided a ten dollar note and two five-dollar notes of marked city funds in exchange for the suspected fentanyl.

Once the drugs for money exchange was complete, the UC gave the signal to indicate he had successfully purchased drugs. The cover officers broadcast the suspect description as a Hispanic male wearing a black and white hat, black jacket, white shirt, blue jeans, and black shoes. SFPD officers moved into the location and took HERNANDEZ into custody. The cover officer confirmed that the arresting officers had the correct subject. SFPD conducted a custodial arrest search of HERNANDEZ and seized suspected fentanyl, methamphetamine, a digital scale, and $495.00 in U.S. currency. Additionally, SFPD located the ten-dollar bill, and two five-dollar bills used to buy the fentanyl from HERNANDEZ.

The drugs seized from HERNANDEZ were submitted to the Alameda County Drug Laboratory for testing. Two bags of suspected fentanyl were tested and came back positive with the net weights of 0.41 grams and 24.38 grams. The bag of methamphetamine was tested and came back positive with a net weight of 22.51 grams. Further analysis of all the narcotics seized revealed a total of 44.9 gross grams of fentanyl and 23.8 gross grams of methamphetamine. PSR at ¶ 15.

In his Plea Agreement, HERNANDEZ admits that he possessed with the intent to distribute both fentanyl and methamphetamine.  He also admitted that:

> "[A]t the time I was selling drugs in this case, I knew that I was on supervised release and that I had failed to report to my probation officer as directed by the Court at my sentencing on May 8, 2024, in related case No. 24-CR-00238 JSC. I also admit that I am not a citizen or national of the United States and that I am a citizen of Honduras. I further admit that I entered this country illegally and have no legal status in the United States."   See Plea Agreement, Dkt.25

### SENTENCING GUIDELINES ANALYSIS

Probation concurs with the Sentencing Guideline calculations set forth in the signed Plea Agreement.  For Count One (Possession with Intent to Distribute Fentanyl):

a.    Base Offense Level, U.S.S.G. §2D1.1(c)(8):                                        24
Greater than 100 kg but less than 400 kg of converted drug weight:
(44.9 grams of fentanyl = 112.25 kg; plus 23.8 grams of methamphetamine =
47.60 kgs.  Total Converted Drug Weight = 159.85

a.    Adjusted Offense Level:                                                                  24

b.    Acceptance of Responsibility, U.S.S.G. § 3E1.1:                           -3

Total Offense Level                                                                                21

**Criminal History**

The PSR found that Mr. HERNANDEZ has 3 criminal history points.  The first two points were for his conviction on August 4, 2023, for being an accessory after the fact in violation of Cal PC § 32 in connection with hand-to-hand drug sales of fentanyl and methamphetamine in the Tenderloin. PSR at ¶ 32.  He also received one point for his time served sentence by this Court in May 2024 for an aggravated felony of possession with intent to distribute fentanyl (that also included his related possession of

methamphetamine). PSR at ¶ 33. A Total Offense Level of 21, with a Criminal History Category II, yields a Guideline sentencing range of 41-51 months. [1]

**Sentencing**

The United States agreed in the Plea Agreement to recommend a sentence in the Form 12 case, of 12 months in case No. 24-CR-00238 JSC, with no supervised release to follow, and 24 months consecutive on the new criminal charges in No. 24-CR-00584 JSC, to be followed by a three-year term of supervised release that includes a stay away order from the Tenderloin and a suspicion less search condition. It is almost a certainty that this time, following his incarceration, Mr. Hernandez will be released to ICE Custody and deported. An ICE detainer has been filed.

## ARGUMENT

**I.      Applying the Section 3553 Factors to Mr. Hernandez**

**A.      Nature and circumstances of the offense and history and characteristics of the defendant**

Mr. Hernandez is 32 years old and said that he came to Oakland in 2022 to see employment. PSR at ¶ 45.   He said that when his mother died, they lost the family home because she had signed it away in order to get food for the family.  PSR at ¶ 47.  He was very close to his mother and her loss was very difficult for him. *Id.*

That may help to explain why he came here without permission, but it does not excuse his repeated drug dealing behavior, especially as it pertains to fentanyl and methamphetamine.  He has several children to take care of and it will be a hardship for him while he is incarcerated.  He hopes to make a better life for himself and his children when he returns to Honduras.  See, e.g. PSR at ¶¶ 50-51. Now, he will be sentenced to federal prison and then almost certainly will be deported.

For both general and specific deterrence and to keep the community safe, we urge the Court to impose up to a 12-month sentence for his Form 12 violations without any further supervised release, to be followed by a 24 month consecutive sentence on the New Criminal Case.  That sentence should also

---

[1]  In addition to the Conviction in April 2023 for being an accessory after the fact and serving a 150-day sentence, he was arrested four other times in 2023 for drug possession/dealing in San Francisco. See PSR at ¶¶ 32,37-40.  He apparently never stopped, even after his conviction in in May 2024 before this Court.

1    include 3 years of supervised release with all the standard and special conditions set forth in the Plea

2    Agreement in Appendix A and in the PSR.  The Court should also forfeit his phone, the money he

3    possessed and his digital scale.

**B.    Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant**

6    The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and

7    much of the South of Market neighborhood, is in crisis.  As the Court is well aware, the proliferation of

8    highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and

9    methamphetamine has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug

10   market not only creates suffering for its participants (including staggering amounts of overdoses and

11   fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as

12   well as for San Francisco itself.  The effects of Mr. Hernandez-Turcios's offense, considered as an

13   individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

14   **II.    The necessity of the proposed supervised release special conditions**

15   A three-year term of supervised release is required by statute for the drug-trafficking offense to

16   which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this

17   disposition.  In particular, the special stay-away condition of release allows the government to

18   accomplish one of its primary goals related to protection of the public: to immediately separate drug

19   traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest)

20   and to affect a strict stay-away from the Tenderloin for three years.  That condition is that:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor
> be present in the area in San Francisco bordered on the west by Van Ness
> Avenue, on the north by Geary Street, on the east by Powell Street and 3rd
> Street, and on the south by Howard Street.

24   Combined with a suspicion-less search condition, to which the parties have also agreed, Section

25   3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by

26   the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin

27   will be both immediate and sustained.

28   He will almost certainly be deported for his aggravated felony drug convictions. Just in case he is

not, the stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking, where courts in this District have encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this case, under the Section 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

**CONCLUSION**

For all the reasons set forth herein, the government recommends that the Court sentence Mr. Hernandez to up to 12 months incarceration for the Form 12 violations, with no supervised release to follow on that Petition, to be followed by 24 months imprisonment in the New Criminal Case. There should also be three years of supervised release on the New Criminal Case once he is released from prison for both cases.  The supervised release conditions should include the two special conditions including the stay-away and suspicion-less search conditions that are imposed in almost all of the Tenderloin drug cases, and the other standard conditions set forth in in the PSR, along with the forfeiture of his seized cash, phone and drug scale. At the conclusion of his prison sentence on both matters, Mr. Hernandez should be released to the custody of ICE so that he can be deported, as appropriate given the Immigration hold.

DATED:  April 16, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney


_____/s/_____
Jeffrey Bornstein
Assistant United States Attorney